This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, James Brienzo, appeals his conviction in the Medina County Court of Common Pleas. We affirm.
On December 28, 2000, the Medina County Grand Jury indicted Mr. Brienzo on one count of theft, in violation of R.C. 2913.02(A)(1). A jury trial was held, commencing on April 2, 2001. In a verdict journalized on April 5, 2001, the jury found Mr. Brienzo guilty of theft. Additionally, the jury found that the value of the property was $500.00 or more, thereby making the theft conviction a felony of the fifth degree. See R.C.2913.02(B)(2). He was sentenced accordingly on May 18, 2001. This appeal followed.
Mr. Brienzo asserts one assignment of error:
 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE WAS INSUFFICIENT BECAUSE REASONABLE MINDS COULD NOT FAIL TO FIND REASONABLE DOUBT OF THE DEFENDANT-APPELLANT'S GUILT.
Mr. Brienzo avers that his conviction for theft, in violation of R.C.2913.02(A)(1), was supported by insufficient evidence as a matter of law and was against the manifest weight of the evidence. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.
(Emphasis omitted.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Mr. Brienzo was convicted of theft, in violation of R.C. 2913.02(A)(1), which provides in relevant part: "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" "If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars * * * a violation of [R.C. 2913.02] is theft, a felony of the fifth degree." R.C. 2913.02(B)(2). Significantly, a person need not leave a store in order to complete a theft offense under R.C. 2913.02(A)(1); rather, the person must knowingly obtain or exert control over the merchandise with the intent to deprive the owner of the property without the owner's consent. State v. Phillips (1993),84 Ohio App.3d 836, 840; State v. Williams (1984), 16 Ohio App.3d 232,234; R.C. 2913.02(A)(1). Additionally, we note that an accused's flight from the scene of a crime is generally admissible as evidence of consciousness of guilt. See State v. Williams (1997), 79 Ohio St.3d 1,11.
At trial, Robert Aleshire testified that, on March 14, 2000, he was working in the electronics department in K-mart, located in the City of Wadsworth, County of Medina, State of Ohio. DVD movies ("DVDs") were stocked almost exclusively in the electronics department. At approximately 8:00 p.m. that night, Mr. Aleshire left the electronics department in order to deposit some cash at the customer service desk. On his return to the electronics department, a customer approached and presumably alerted him to a possible shoplifting in progress. He immediately phoned security and rushed to the area described by the customer. Mr. Aleshire testified that he heard the sound of someone running. When he spotted two individuals, who were, at that point, walking briskly, he stood in front of them to impede their progress. According to Mr. Aleshire, the individuals brushed past him and left the store. Mr. Aleshire later identified one of the individuals in a photo-array as Mr. Brienzo. Mr. Aleshire testified that, after the two individuals left the store, he went to the toy department, which was located in the direction from which he saw the two individuals running, and observed DVDs lying on the floor, DVDs lying in a shopping cart, and DVDs that had either fallen between boxes or had been stuffed behind other merchandise on the shelves. Some of the DVDs had been opened and removed from their plastic containers, presumably so that the security devices would not set off an alarm when the DVDs were taken from the store. Other DVDs remained unopened. He also found an Exacto knife lying on a shelf near the DVDs. Mr. Aleshire testified that DVDs usually cost between fourteen and thirty dollars. Mr. Aleshire approximated that he saw between thirty and forty opened DVDs.
Brien Workman, a customer shopping at K-mart at the time of the incident, testified that he was walking toward the toy department with his two children when he heard a security call on the public address system. Mr. Workman related that he then heard something crash to the ground and saw two people running down different aisles. Mr. Workman testified that, when he went around the corner, he saw DVDs scattered across the floor and on shelves. He noted that some of the DVDs were loose, meaning that they had been removed from their packaging. Mr. Workman found a pager near the DVDs, but, it was later discovered that the pager did not belong to Mr. Brienzo. Contrary to Mr. Aleshire's testimony, Mr. Workman testified that only one individual brushed past Mr. Aleshire on the way out of the store, as the other individual had run in a different direction.
Anthony DiPietro, K-mart's department manager of lawn and garden, testified that a customer gave him a tip regarding merchandise, so he started looking for things amiss. He saw two men running, so he stood in front of them and asked if they needed any help. They did not answer and moved past him. Mr. DiPietro later identified in a photo-array Mr. Brienzo as one of the men who went past him that night. Mr. DiPietro also testified that he saw DVDs scattered in both the toy department and the hardware department.
Donna Wise, a long-time employee of K-mart who worked in the toy department, testified that, on the morning of March 15, 2000, before the store opened for business, she found more opened DVDs in the toy department. She further testified that she found a wallet near the DVDs, which contained a traffic ticket with Mr. Brienzo's name on it.
Patrolman Joshua A. Cooper of the City of Wadsworth Police Department was dispatched to the K-mart at approximately 8:20 p.m. on March 14, 2000. When he arrived at the K-mart, the store manager handed him a shopping bag full of loose DVDs. He also observed DVDs in a shopping cart, on the shelves, and behind boxes. Some of the DVDs were opened. He testified that he inventoried forty-four DVDs that were recovered on both March 14, 2000 and March 15, 2000. Patrolman Cooper also noted that the wallet, discovered near the DVDs, had a social security card with Mr. Brienzo's name and social security number on it and had two traffic tickets with Mr. Brienzo's name on them. He further related that he lifted fingerprints from some of the DVDs recovered on March 15, 2000, as the DVDs recovered on March 14, 2000 had been handled by store personnel.
Michelle Snyder, a forensic scientist with the Bureau of Criminal Identification and Investigation, analyzed the fingerprints taken from certain DVDs recovered on March 15, 2000. Ms. Snyder testified that the fingerprints on two DVDs were linked to Mr. Brienzo.
Melanie George, the loss control manager at K-mart, testified that she assisted Patrolman Cooper in compiling a price list for the DVDs, which had been recovered. She related that most of the DVDs, approximately forty-four, had been removed from their packaging, while thirteen DVDs were partially opened. She testified that the DVDs recovered cost approximately $1,298.00.
We note that there was testimony that the DVDs could be moved throughout the store and that none of the DVDs in question were removed from the store. However, as previously mentioned, a person need not leave a store in order to complete a theft offense under R.C. 2913.02(A)(1).Phillips, 84 Ohio App.3d at 840; Williams, 16 Ohio App.3d at 234. After a thorough review of the record, we conclude that the jury did not clearly lose its way and commit a manifest miscarriage of justice in finding that Mr. Brienzo intended to deprive K-mart of its DVDs and knowingly exerted control over the DVDs without the consent of K-Mart, and that the value of the DVDs was five hundred dollars or more. Accordingly, Mr. Brienzo's conviction for theft was not against the manifest weight of the evidence. Consequently, we find that Mr. Brienzo's assertion that the state did not produce sufficient evidence to support a conviction for theft is also without merit. See Roberts, supra, at 4. Mr. Brienzo's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, J., CARR, J. CONCUR.