DECISION.
{¶ 1} Plaintiff-appellant Jean Riley appeals from the trial court's entry of summary judgment in favor of defendant-appellee, Supervalu Holdings, Inc. ("Supervalu"), on her consumer-sales-practices claim.
 I. Facts and Procedural History {¶ 2} On December 5, 2003, Riley and her husband were shopping at a bigg's Foods ("bigg's") grocery store. Riley and her husband were pushing two shopping carts around the store. One cart contained packages from a Family Dollar Store. The other cart contained items they intended to purchase from bigg's. Riley purchased approximately $120 of goods from bigg's. As Riley was leaving the store, two bigg's employees accused her of stealing a can of cat treats valued at $1.06. While admitting that she had not paid for the cat treats, Riley denied stealing them. Rather, she claimed that she had inadvertently tossed the can of treats into the shopping cart with her purchases from the Family Dollar Store. Riley was arrested and charged with theft, but the charge was later dismissed for want of prosecution.
 {¶ 3} In conjunction with the incident, bigg's Loss Prevention Department sent Riley a written demand letter for $50 as payment for bigg's damages, which included administrative costs and a penalty related to the theft. The letter, citing R.C.2307.61, informed Riley that payment of the $50 had to be made within thirty days. The letter further provided that Riley's failure to pay would result in a civil action against her, which could result in additional penalties, court costs, and attorney fees.
 {¶ 4} Riley, acting upon the advice of her public defender, did not pay the demand. Riley subsequently retained counsel, who advised her to pay the demand. In April 2004, Riley purchased a money order near her attorney's office. With her attorney's assistance, Riley composed a letter stating that she had been threatened with a "baseless lawsuit." Riley then mailed the letter and the money order to bigg's.
 {¶ 5} One week later, Riley filed a class-action complaint against bigg's, alleging that it had violated the Ohio Consumer Sales Practices Act ("OCSPA" or "Act") in connection with the civil demand letter that it had sent to her. Riley sought to represent a class of persons who like herself, had been sent a civil demand letter and who had not been convicted of any crime based upon the accusation contained in the letter. Two months later, Riley amended her complaint to include Supervalu, the owner of bigg's, as the defendant.
 {¶ 6} Supervalu subsequently moved for summary judgment. It argued that the OCSPA could not apply to Riley's claim because her taking of the cat treats was not a consumer transaction. Supervalu also argued that the Act was inapplicable because its demand letter was specifically authorized by R.C. 2307.60 and2307.61. The trial court granted Supervalu's motion for summary judgment without opinion or explanation.
 {¶ 7} In her sole assignment of error, Riley now argues the trial court erred in granting summary judgment to Supervalu.
 II. Standard of Review {¶ 8} We review a trial court's decision granting a motion for summary judgment de novo.[1] Summary judgment is appropriate when the trial court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated, and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion.[2]
 III. Consumer Sales Practices Act {¶ 9} Riley argues that the trial court erred in granting summary judgment to Supervalu on her OCSPA claim for three main reasons. First, Riley contends that there was a transfer, and thus a "consumer transaction," when she took the cats treats from bigg's without paying for them. Second, Riley argues that because she was never convicted of theft, and because she never admitted to stealing the cat treats, Supervalu could not prove that she had committed a theft and thus could not use R.C. 2307.60 and2307.61 to assess a $50 penalty against her. Third, Riley argues that because a trier of fact must determine if an act is unfair, deceptive, or unconscionable under the OCSPA, her claims could not be subject to summary judgment unless a trier of fact could never find Supervalu's collection methods to be deceptive.
 {¶ 10} The OCSPA prohibits suppliers from committing an unfair or deceptive act or practice in connection with a consumer transaction.[3] The Act defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods * * * to an individual * * *."[4] Whether the parties have engaged in a consumer transaction is a question of law for the court to determine.[5]
 {¶ 11} Riley first argues that the trial court erroneously determined that the OCSPA was inapplicable to her case for lack of a consumer transaction. Riley contends that there was a "transfer," and thus a "consumer transaction," when she took the cat treats from bigg's without paying for them. Riley argues that the removal of the cat treats from the store shelf to her cart transferred possession of the cat treats from the store to herself based on this court's interpretation of the word "transfer" in Woodrum v. Iles.[6]
 {¶ 12} In Woodrum, this court analyzed whether a defendant had transferred property in violation of a probate court's order.[7] Because the order did not define the term "transfer," this court looked to the definition of that term in Black's Law Dictionary.[8] We held that a complete definition of "transfer" encompassed more than the conveyance of legal title to another person because the term "transfer" "also mean[t] `to convey or remove from one place or one person to another, to pass or hand over from one to another, especially to change over possession or control of.'"[9]
 {¶ 13} The problem with Riley's argument is that it ignores the plain language of the OCSPA. For a transfer of goods to qualify as a "consumer transaction" under the OCSPA, the transfer must be "to the individual."[10] Implicit in this definition is that the transfer must be made by the supplier. This is clear on the face of the OCSPA, which forbids a supplier from committing deceptive or unconscionable acts in connection with a "consumer transaction," which means in connection with "a sale * * * or other transfer of an item of goods * * * to an individual * * *."[11] Moreover, Ohio courts have expressly recognized that a "transfer" of goods under the OCSPA must be made by the supplier to the purchaser.[12] Because the OCSPA provides that the supplier and not the consumer must make the transfer of goods, Riley's reliance on Woodrum is misplaced.
 {¶ 14} Relying on out-of-state implied-warranty cases, Riley next argues that a transfer of the cat treats occurred under the OCSPA when she physically took the cat treats from the store shelf with the intent to pay for them. Riley contends that because out-of-state courts have held that a consumer's taking of goods from a self-service display, when coupled with the intent to pay for them, creates a contract for sale, we should likewise hold that her physical removal of the cat treats when coupled with her intent to pay for them created the required consumer transaction under the OCSPA. We disagree.
 {¶ 15} The case law upon which Riley relies is both factually and legally distinguishable from this case. The courts in those cases only analyzed whether an implied warranty would attach under the Uniform Commercial Code when a consumer was injured by an item in the store prior to its purchase. Looking at the language of their respective commercial codes, the courts held that all that was required for an implied warranty to attach was the existence of a contract for sale. The OCSPA, in contrast, requires more than just a contract for sale; it requires a completed act — a "sale * * * or other transfer * * * to an individual." Consequently, if we adopted Riley's reasoning, we would not only be ignoring the clear language of the statute, but also be giving consumers the right to subject retailers to the burdens of the OCSPA without any corresponding benefit for the goods transferred. Furthermore, our decision would also be inconsistent with Ohio criminal law, which provides that a store does not relinquish its control over an item until it has been purchased by the customer.[13] Consequently, we find Riley's second argument to be meritless.
 {¶ 16} Riley further argues that this court's decision inBraucher v. Mariemont Auto[14] supports her argument that the OCSPA applies to a transfer of goods in the absence of a completed sale.
 {¶ 17} In Braucher, the parties signed a purchase order for a car, and the seller allowed the plaintiff to leave the premises with the vehicle.[15] When the plaintiff's financing fell through, the dealership repossessed the vehicle.[16] The plaintiff asserted that the seller had violated R.C. 1345.02 by failing to inform him in writing that the sale of the vehicle was contingent upon his obtaining financing.[17] The trial court granted summary judgment to the seller, concluding that because the plaintiff had not paid any consideration for the vehicle, a sale had not occurred.[18]
 {¶ 18} We reversed the entry of summary judgment for the seller, holding that there was a material dispute regarding whether the plaintiff had made a downpayment on a car.[19]
We further held that because the seller had voluntarily transferred possession of the car to the consumer, the requisite consumer transaction had occurred under the Act and that the trial court should have considered the plaintiff's OCSPA claim on its merits.[20]
 {¶ 19} Riley contends that there is no difference between the repossession that took place in Braucher and Supervalu's demand letter to her, because both situations involved a transfer of goods without a completed sale. Riley's argument, however, ignores a crucial difference between Braucher and her case: namely, that in Braucher both parties intended that the vehicle be transferred to the consumer, and both parties took actions to effectuate the transfer. In Braucher, the parties signed a purchase order for the vehicle, the plaintiff made a downpayment, and the seller affirmatively acted to transfer possession of the car to the plaintiff by allowing him to leave the premises with it. In Riley's case, however, she never paid for the cat treats and Supervalu never gave her permission to leave the store with them. Because Riley's one-sided act of removing the cat treats from the store without payment was starkly different from the facts that gave rise to the "transfer" in Braucher, we find her reliance on Braucher to be misplaced.
 {¶ 20} Because we conclude that the plain language of the OCSPA contemplates a transfer from a supplier to a purchaser, and because the undisputed evidence shows that Riley unilaterally removed the cat treats from the store without payment, Riley cannot show that there was a "transfer," and thus a "consumer transaction," as required under the Act. Consequently, Supervalu was entitled to summary judgment as a matter of law on this issue.
 IV. R.C. 2307.60 and 2307.61 {¶ 21} Next, Riley claims that the trial court erred in granting Supervalu's motion for summary judgment on the basis that R.C. 2307.60 and 2307.61 precluded her OCSPA claim. The OCSPA states that it does not apply to "[a]n act or practice required or specifically permitted by or under federal law, or by or under other sections of the Revised Code."[21] Riley contends that R.C. 2307.60 and 2307.61 require a property owner to prove that the accused committed a criminal act before serving its demand letter. Thus, Riley argues that because she was never convicted of theft, and because she never admitted to stealing the cat treats, Supervalu could not prove that she committed a theft and thus could not use those statutes to immunize itself from the provisions of the OCSPA.
 {¶ 22} While we acknowledge that R.C. 2307.60 requires a plaintiff to prove that it was injured by a criminal act to recover damages,[22] the statute does not require that a property owner prove that a theft offense occurred before sending a demand letter under R.C. 2307.61. Indeed, R.C. 2307.61(F) specifically provides that a property owner's right to recover damages exists regardless of whether the accused has pleaded guilty to or has been convicted of any criminal offense.[23]
 {¶ 23} The recovery procedures outlined in the statute further support this conclusion. R.C. 2307.61 provides that a person who receives a demand letter is under no obligation to pay it. Thus, if the retailer makes a baseless demand, the recipient can simply choose not to pay it. If the baseless demand is not paid and the property owner brings an unsuccessful action under R.C. 2307.60, then the recipient of the letter may recover his reasonable attorney fees, the cost of defending against the action, and any compensatory damages. Thus, because the statute provides recourse to a successful defendant, there is no need for the retailer to prove prior to sending the demand letter, that the recipient of the letter committed a criminal act.
 {¶ 24} Moreover, as Supervalu points out, the only case to interpret R.C. 2307.61 with the OCSPA supports this conclusion. In Havens-Tobias v. Eagle, the Second Appellate District affirmed the dismissal of an OCSPA claim brought against a party who had made a similar demand under R.C. 2307.61.[24] In that case, an attorney representing a collection agency sent the plaintiffs a demand letter pursuant to R.C. 2307.61.[25]
The plaintiffs brought suit, alleging that the demand letter violated the OCSPA.[26] The plaintiffs alleged that the attorney had violated the OCSPA by threatening to file suit and by alleging that they had passed bad checks, among other things.[27] The plaintiffs denied that they had committed the offense of passing bad checks, claiming instead that they had tendered payment.[28] The Second Appellate District upheld the dismissal of their complaint.[29] The court, citing R.C. 2307.61, among other statutes, held that the attorney's actions to collect the debt were "reasonable and lawful."[30]
 {¶ 25} Riley argues that the plaintiffs' claim inHavens-Tobias is distinguishable from her claim because the creditor in Havens-Tobias case had sufficient proof of a criminal violation to justify sending the demand letter. She argues that the plaintiffs' failure to discharge their obligations within ten days of the notice of dishonor gave the creditor in that case sufficient intent to claim a violation of R.C. 2913.11. But the appellate court in Havens-Tobias never addressed this issue. The court did not provide any analysis regarding whether the plaintiffs had failed to discharge their obligation under the statute, nor did it discuss whether the creditor had sufficient intent to claim a violation of R.C.2913.11. And even if the appellate court in Havens-Tobias had held that there was "sufficient intent" to justify its claim of a criminal violation, Supervalu would have still been able to send its demand letter because Riley's removal of the cat treats without payment on the basis that she had failed to pay for them was sufficient evidence of theft for it to allege a criminal violation under R.C. 2913.02.[31]
 {¶ 26} Consequently, we cannot conclude that R.C. 2307.60 and2307.61 require a property owner to have undisputed proof of a theft prior to sending a demand letter. Because Supervalu was legally permitted to send Riley the demand letter, the OCSPA was inapplicable to her claim. Consequently, Supervalu was entitled to summary judgment on this basis as well.
 {¶ 27} Finally, Riley argues that summary judgment was improper on her OCSPA claim because a trier of fact must determine whether Supervalu's demand letter was unfair, deceptive, or unconscionable under the OCSPA. But because we have already concluded that the OCSPA could not apply to Riley's claim as a matter of law, because Riley's one-sided act of removing the cat treats without payment was a not a "consumer transaction" as required under the Act, and because Supervalu's actions were permitted by R.C. 2307.61, we need not determine whether a trier of fact might find Supervalu's demand letter to be deceptive under the Act.
 {¶ 28} Because we have concluded that Supervalu was entitled to judgment as a matter of law on Riley's OCSPA claim, the trial court did not err in granting summary judgment in its favor. We, therefore, overrule Riley's sole assignment of error and affirm the judgment of the trial court.
 V. Motion for Sanctions {¶ 29} Supervalu has moved this court pursuant to App.R. 23 for an award of its reasonable attorney fees and expenses associated with this appeal. An appeal is deemed frivolous under App.R. 23 when it does not present any reasonable question for review.[32] Because Riley has ignored the clear language of the OCSPA, the civil collection statutes, and controlling case law, we find her appeal to be frivolous. We grant Supervalu's motion for sanctions against Riley's counsel and award it $2500 in attorney fees for the prosecution of this appeal.
Judgment accordingly.
Gorman, P.J., concurs.
Painter, J. concurs in part and dissents in part.
[1] Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[2] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267; see Civ.R. 56(C).
[3] R.C. 1345.02(A).
[4] R.C. 1345.01(A).
[5] Rose v. Zaring Homes (1997), 122 Ohio App.3d 739, 749,702 N.E.2d 952, fn. 10; Brown v. Liberty Clubs, Inc. (Mar. 21, 1988), 12th Dist. No. CA87-05-040 ("Whether there was a consumer transaction between the parties was not a question of fact for the jury, but a question of law for the trial judge.").
[6] 1st Dist. No. C-020311, 2003-Ohio-778.
[7] Id.
[8] Id. at ¶ 7.
[9] Id.
[10] R.C. 1345.01(A).
[11] Id.
[12] See Garner v. Borcherding Buick, Inc. (1992),84 Ohio App.3d 61, 64, 616 N.E.2d 283 (where this court held that for a defendant to be liable under the OCSPA, "it must be engaged in the business of effecting or soliciting consumer transactions and * * * must have some connection to the consumer transaction in question"); Miner v. Jayco, Inc. (Aug. 27, 1999), 6th Dist. No. F-99-001 ("[T]o come within the realm of the [O]CSPA, the consumer transaction must be between a `supplier' and an individual * * *."); Fendrich v. F.I.F. Dev., Inc. (Oct. 16, 1991), 9th Dist. No. 2633 (where the Ninth Appellate District held that the OCSPA was inapplicable to a campground membership because the man suing the campground had not purchased the membership from the campground, but from a woman's estate).
[13] See State v. Phillips (1993), 84 Ohio App.3d 836,619 N.E.2d 29 (where an appellate court rejected a defendant's claim that she could not be convicted of shoplifting under R.C. 2913.02
because she had the owner's consent to remove objects from the store shelf and carry them throughout the store on the basis that the store did not relinquish its control over the objects until the customer had actually purchased them); see, also, State v.Lawson (July 27, 1987), 12th Dist. No. CA86-11-070 (where the appellate court found sufficient evidence to confirm a theft conviction where the defendant had left a store without paying for some items and claimed that he had simply forgotten to pay).
[14] 1st Dist. No. C-010599, 2002-Ohio-3298.
[15] Id. at ¶¶ 2-3.
[16] Id. at ¶ 4.
[17] Id. at ¶ 11.
[18] Id. at ¶ 9.
[19] Id.
[20] Id. at ¶ 10.
[21] R.C. 1345.12(A).
[22] See Hite v. Brown (1995), 100 Ohio App.3d 606, 611,654 N.E.2d 452, fn.1
[23] The statute has since been amended, and this language now appears in subdivision (G)(1); see, also, Gonzalez v. Spofford,
8th Dist. No. 85231, 2005-Ohio-3415, at ¶ 27.
[24] 2nd Dist. No. 19562, 2003-Ohio-1561, at ¶¶ 19-21.
[25] Id. at ¶ 10.
[26] Id. at ¶ 12.
[27] Id. at ¶ 20.
[28] Id. at ¶¶ 20-21.
[29] Id. at ¶¶ 20-22.
[30] Id.
[31] See Philips, supra; Lawson, supra.
[32] Tessler v. Ayer (1995), 108 Ohio App.3d 47, 57,669 N.E.2d 891.