The STATE of Ohio, Appellee,

v.

PHILLIPS, Appellant.

[Cite as *State v. Phillips* (1993), 84 Ohio App.3d 836.]

Court of Appeals of Ohio,
Lake County.

No. 92–L–049.

Decided Jan. 4, 1993.

*Steven C. LaTourette,* Lake County Prosecuting Attorney, and *Geoffrey W. Weaver,* Assistant Prosecuting Attorney, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *James B. Ritts,* Assistant Public Defender, for appellant.

CHRISTLEY, Judge.

This appeal has been taken from a judgment of the Lake County Court of Common Pleas. Following an abbreviated jury trial, appellant, Tonya L. Phillips, was found guilty of theft, under R.C. 2913.02(A)(1). This conviction was based upon an incident in which she was arrested for allegedly shoplifting certain items at a department store. This was the second trial in this matter, as the trial court

granted appellant's motion for a new trial after the first trial in which appellant was found guilty of theft.

The department store in question is located on Chardon Road in Willoughby, Ohio. On May 29, 1991, at approximately 8:00 p.m., appellant entered the store with two of her four children. Upon stopping at the service desk to indicate her desire to exchange a certain item, appellant went to three separate departments within the store: electronics, women's apparel, and toys. While in the toys department, appellant selected four items for her children.

While in the electronics department, she was observed by two store detectives. The detectives continued to watch her after she left this department. Although she was under continuous surveillance from then on, neither detective observed appellant go through the checkout counter at the front of the store. They then stopped her in the parking lot after she had exited the store.[1] At that time, the detectives accused appellant of shoplifting and took her back into the store.

After the authorities had been notified, appellant was taken to the Willoughby Hills Police Department. While she was being processed, appellant was informed of her *Miranda* rights and asked to make a written statement. Although she did not give such a statement, she did state to one of the officers that "[i]t's just something I can't help."

At trial, the two detectives testified that the four toys were in appellant's shopping cart while she was in the electronics department. These toys were not in a bag, but were lying loose in the bottom of the cart. The detectives further testified that before leaving that department, appellant placed three videotapes into her purse. According to the detectives, she then left the store without paying for any of the tapes or the toys.

In addition to the detectives' testimony, the state tried to introduce the oral statement which appellant had given to the police. Appellant's counsel objected, arguing that she had not been given proper notice of the state's intent to introduce the statement. The trial court then overruled the objection and allowed the state to proceed with the evidence.

Testifying on her own behalf, appellant denied taking any tapes from the electronics department. Appellant also stated that she did not go to the toys department until she had left the electronics department, and that she paid for the toys before leaving the store.

---

1. At oral argument, the prosecutor indicated that appellant bypassed two checkout points, one in the electronics department itself and the one at the front of the store. However, the transcript of the trial testimony of the two detectives refers only to the checkout at the front of the store.

In conjunction with her testimony, appellant offered into evidence a receipt from the store in question. This receipt covered the four exact toys which had been found in the shopping cart. The receipt indicated that the purchase had been made at 8:22 p.m. As to the date, the receipt indicated that the purchase had occurred in May 1991, but the part which indicated the exact day was ripped. As part of her testimony, appellant stated that the receipt had been ripped by her son when he took a toy from the bag.

In addition to finding appellant guilty, the jury also answered two interrogatories. In response to the first interrogatory, the jury found that appellant had stolen the four toys as charged. In response to the second, the jury found that she had *not* taken the three tapes.

At the close of the state's case, the parties stipulated on the record that appellant had previously been convicted of theft; accordingly, under R.C. 2913.-02(B), appellant was found guilty of a fourth-degree felony. Based upon the jury verdict, the trial court sentenced appellant to a definite term of eighteen months in a state penitentiary. The court then suspended the execution of the sentence, ordered her to serve sixty days in the county jail, and placed her on probation for two years.

In appealing her conviction, appellant has assigned the following as error:

"1. The trial court erred to the prejudice of the defendant-appellant when it overruled her motions for acquittal made pursuant to Rule 29 of the Ohio Rules of Criminal Procedure.

"2. The trial court erred to the prejudice of the defendant-appellant when it admitted her alleged statement to police at trial over the objection of defense counsel."

■ At the close of the state's case, appellant moved the court for an acquittal under Crim.R. 29. As grounds for this motion, appellant argued that she had been indicted under the wrong statutory provision. Specifically, she asserted that the state's evidence could only support a conviction under R.C. 2913.02(A)(2), not 2913.02(A)(1). In her first assignment, appellant maintains that the trial court erred in denying her motion.

Appellant was indicted under R.C. 2913.02(A)(1). This provision states:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent * * *"

The next subsection of the statute, (A)(2), prohibits an individual from knowingly *obtaining* control over property or services:

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent * * *."

As appellant aptly notes, the First Appellate District has held that the elements of an (A)(1) offense and an (A)(2) offense are not identical. *State v. Woody* (1986), 29 Ohio App.3d 364, 29 OBR 493, 505 N.E.2d 646. As a result, the *Woody* court further held that an indictment could not be amended from (A)(1) to (A)(2) without changing the identity of the offense.

In arguing that the facts of this case can only support a conviction under (A)(2), appellant basically contends that a shoplifter can never be convicted under (A)(1). Appellant bases this argument upon the proposition that when a person enters a retail department store, she has the consent of the owner to remove objects from the shelves and carry them with her throughout the store until she is ready to leave. Thus, according to appellant, the offense does not occur until the person leaves the store because it is at that point that she has taken the object beyond the scope of the consent.

Research on this issue indicates that no court in this state has addressed the merits of this argument. However, appellate courts have generally upheld convictions for shoplifting under R.C. 2913.02(A)(1). See, *e.g., State v. Wallace* (Nov. 8, 1989), Summit App. No. 14093, unreported, 1989 WL 135818. Based upon the following reasons, this court concludes that (A)(1) is the proper subsection of the theft statute under which to prosecute a person for shoplifting.

As noted earlier, before a person can be convicted of theft under R.C. 2913.02, she must control the object "with purpose to deprive the owner" of the object. The implicit permission to place an item of inventory in a shopping cart is not the same as giving the customer "control" over that item. Even within the confines of the store premises, the customer does not "control" the item and is not free to treat the item as if it were her possession. The store has not yet relinquished *any* of its control over or rights to the merchandise prior to actual purchase by the customer.

Thus, the transportation of merchandise without payment beyond the checkout points, or in a manner designed to conceal the merchandise, constitutes the exercise of "control" and is clearly the type of action which subsection (A)(1) was designed to prohibit.

In contrast, the wording of subsection (A)(2) supports the inference that it was designed to cover those instances in which the *mens rea* is formed *after* the person has custody of the object with the owner's limited consent. Thus, the

offense delineated in (A)(2) is comparable to the common-law offense of conversion.

Although this court would agree that a patron has the consent of a store owner to carry merchandise throughout the store until she decides whether to purchase it, that consent does not extend to other uses of the merchandise, and the store has not relinquished *any* of its rights to control the merchandise. Certainly, an owner does not consent to the movement of the merchandise in order to facilitate its theft. Thus, subsection (A)(2) of the theft statute is not applicable to a shoplifter.

In this case, the allegations against appellant fall within the scope of R.C. 2913.02(A)(1), not (A)(2). As a result, we conclude that appellant was indicted for the appropriate offense. We note that the appellant was apprehended *outside* the department store in question in the parking lot, without having made payment. Clearly, this is beyond any consent concept.

■ Under her first assignment, appellant also argues that the jury verdict should be reversed because the responses to the interrogatories were inconsistent in two respects. She first contends that the answers themselves were inconsistent because it was found that she took the four toys, but not the videotapes. Second, she contends that the finding that she stole the toys was inconsistent with the evidence.

As to the first argument, it should be noted that this court has consistently held that a jury is free to disbelieve parts of a witness's testimony, while believing other parts. *State v. Sallee* (July 19, 1991), Ashtabula App. No. 90–A–1512, unreported, 1991 WL 132186. While we would agree that the evidence was such that it is arguable that the answers to the two interrogatories should have been reversed, we do not believe that this shows that the jury lost its way. The jury could have accepted appellant's testimony as to the videotapes, but accepted the detectives' testimony as to the toys.

■ Appellant's second argument, that the finding as to the toys was inconsistent with the evidence, is based upon the receipt which she introduced at trial. As was indicated earlier, this receipt covered the same four toys as were in her shopping cart. Appellant maintains that this receipt unequivocally established that she purchased the toys before leaving the store.

However, the record before us contains some evidence supporting the conclusion that this receipt did not cover the four items which appellant was accused of taking. First, the receipt did not indicate the exact day upon which the transaction it covered took place; thus, it is possible that this transaction was fabricated and occurred on a day other than May 29, the day appellant was

arrested. Second, we would note that this receipt was not found in appellant's purse when it was inventoried at the police station.

In relation to this point, we would further note that the receipt indicated that the four toys were bought with cash. The receipt also showed that appellant should have received approximately $4 in change from the transaction. Yet, when appellant's purse was inventoried after the arrest, the police officer found only one $1 bill, plus a considerable amount of quarters, dimes, and nickels. If appellant had purchased the toys on the evening of her arrest, she should have had at least three $1 bills in her purse, unless she had received coins as her change. As this is somewhat unlikely, the jury could have legitimately concluded that the receipt was bogus.

Overall, the record contains some competent, credible evidence supporting the general verdict and the answers to the interrogatories. Thus, the first assignment in this appeal is not well taken.

■ Appellant's next assignment pertains to the admission of her prior oral statement into evidence. As noted above, in this statement, appellant told an officer at the station that "[i]t's just something I can't help." As she did at the trial level, appellant contends that the officer should not have been allowed to testify about the statement because she had not received proper notice of the statement prior to trial.

The record before this court contains very little about the discovery of the oral statement. Three days prior to trial, the state filed a supplemental discovery response, indicating that it intended to introduce this statement at trial.[2] There is no indication that appellant moved for a continuance as a result of the new discovery. Nevertheless, when the state sought to introduce the statement, appellant objected. The following colloquy then took place:

"[Counsel]: Testimony about what she may or may not have said wasn't provided in discovery, wasn't provided in the first trial, and he's coming in here today—

"The Court: Isn't this what we talked about in chambers?

"[Counsel]: Right. I'm renewing my objection.

"The Court: You knew that there were statements made.

---

2. During oral arguments in this case, the state argued that appellant's statement had been introduced at the first trial. As to this point, we would note that the record before us does not contain a transcript of the first trial. Moreover, there is nothing else in the record which verifies the state's point. Thus, while the state's point may be true, it cannot be relied upon in addressing the merits of this assignment.

"[Counsel]: I knew allegedly something had been said, but I was never provided, until Friday, with what had been said.

"The Court: Overruled."

The record before this court does not contain a transcript of the discussion in chambers concerning this issue.

Before this court, the state concedes that appellant's oral statement was discoverable under Crim.R. 16, even though a written summary had not been made. See, *e.g.*, *Columbus v. Stepp* (Oct. 6, 1992), Franklin App. Nos. 92AP–486 and 92AP–487, unreported, 1992 WL 281229. Moreover, the record shows that discovery of the statement was provided prior to trial. Thus, the sole issue before us is whether appellant was prejudiced as a result of the timing of the notice.

As to this point, we would first note that there is no indication that the state purposely withheld the statement in order to obtain a tactical advantage. Second, not only was appellant given notice more than two days before trial, but the record also shows that appellant's counsel was aware of the existence of a statement before that; thus, counsel had some time in which to consider the effect of this statement upon the case. Third, there is no indication in the record that appellant moved for a continuance as a result of the delayed discovery. Fourth, appellant has failed to indicate how her trial strategy would have been altered if timely notice had been given.

Under similar circumstances, at least one appellate court has held that a trial court did not abuse its discretion in admitting the oral statement into evidence at trial. *State v. Hale* (Nov. 23, 1988), Miami App. No. 87–CA–48, unreported, 1988 WL 129187. The holding in *Hale* is clearly applicable to this case. Thus, appellant's second assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.