OPINION
{¶ 1} Appellant, Annette L. Murchison, appeals the judgment entered by the Lake County Court of Common Pleas. The following facts are relevant to a determination of this appeal.
 {¶ 2} On January 10, 2007, at approximately 7:30 p.m., Thomas Cutwright, the loss-prevention manager at the Macy's located in the Great Lakes Mall, observed a vehicle pull into the fire lane and drop off two individuals. Mr. Cutwright recognized one *Page 2 
of the individuals as Ms. Charlotte Tubbs, a known shoplifter. Mr. Cutwright was able to observe the individuals through a surveillance system consisting of 34 cameras.
 {¶ 3} Ms. Tubbs, along with her female companion, later identified as Murchison, approached Macy's jewelry department. At that time, Murchison began staring at the surveillance camera dome, which was located above her. Murchison stood very close to Ms. Tubbs when they approached a rounder that contained a display of jewelry. Then, Ms. Tubbs removed earrings from the display rounder and put them into her purse. In total, Ms. Tubbs placed five identical pairs of earrings in her purse. As Ms. Tubbs was placing the earrings in her purse, Murchison used her body in an attempt to shield her actions from the surveillance cameras. After this, Ms. Tubbs and Murchison walked to the other side of the counter, stopped, and looked directly at the surveillance camera in order to evaluate where the camera was pointing.
 {¶ 4} After a few seconds of staring at the camera, Ms. Tubbs and Murchison walked to the women's restroom, located in the men's department. After approximately 25 to 30 seconds, Murchison exited the women's restroom and returned to the jewelry department. Ms. Tubbs exited the women's restroom a few minutes thereafter. At this point, Mr. Cutwright sent a female sales associate to the women's restroom where she found empty jewelry boxes.
 {¶ 5} Ms. Tubbs then proceeded to the area where the men's leather coats were located. Ms. Tubbs selected two leather coats from the display rack and immediately walked into the fitting room. Upon exiting the fitting room, Mr. Cutwright observed that Ms. Tubbs had her jacket buttoned to the top, and he was able to ascertain that Ms. Tubbs was wearing both of the men's leather jackets under her own jacket. *Page 3 
 {¶ 6} While this was taking place, Murchison was in the jewelry department. At this point, both Murchison and Ms. Tubbs were apprehended and escorted to the security office. Security recovered the two leather jackets from Ms. Tubbs' person; the leather jackets were valued at $400 each. Ms. Tubbs also removed five pairs of earrings from the back of her pants; the earrings were valued at $100 per pair.
 {¶ 7} On March 16, 2007, Murchison was indicted on two counts of complicity to theft, felonies of the fifth degree, in violation of R.C. 2913.02(A)(3) and 2923.03(A)(2). The indictment alleged Murchison did purposely and/or knowingly aid or abet Ms. Tubbs in committing theft. The first count pertained to the theft of jewelry, while the second count pertained to the theft of the leather jackets.
 {¶ 8} The matter proceeded to a jury trial on July 16, 2007. With respect to the theft of the jewelry, the jury found Murchison guilty of count one, complicity to theft, in violation of R.C. 2923.03(A)(2) and2913.02(A)(3). With respect to the count relating to the leather jackets, the jury found Murchison not guilty. Murchison was sentenced to serve 180 days in the Lake County Jail and five years of community control.
 {¶ 9} Murchison filed a motion to stay the execution of her jail time; however, this court overruled her motion to stay. Murchison also filed a timely notice of appeal in this court and asserts the following as her first assignment of error:
 {¶ 10} "The trial court erred as a matter of law by overruling defendant-appellant's Crim. R. 29 motion for acquittal in light of the fact that the state produced insufficient evidence to support a conviction for complicity to theft by deception as charged under R.C. 2913.02(A)(3)." *Page 4 
 {¶ 11} Pursuant to Crim. R. 29(A), a trial court is required to order an acquittal of "one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 12} The Supreme Court of Ohio, in State v. Bridgeman, established the standard for evaluating motions for acquittal. State v.Bridgeman (1978), 55 Ohio St.2d 261. The Bridgeman Court stated that, "[p]ursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307. Thus, "[a]n appellate court must look to the evidence presented to determine if the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt."State v. Clark, 11th Dist. No. 2002-A-0056, 2003-Ohio-6689, at ¶ 16. Furthermore, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the [jury]." State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 13} In the instant case, Murchison was charged with two counts of complicity to theft by deception. R.C. 2913.02 provides: *Page 5 
 {¶ 14} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 15} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 16} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 17} "(3) By deception;
 {¶ 18} "(4) By threat;
 {¶ 19} "(5) By intimidation."
 {¶ 20} Pursuant to R.C. 2913.01(A), "deception" is defined as:
 {¶ 21} "(A) * * * [K]nowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 22} Under this assignment of error, Murchison argues the state should have indicted her under R.C. 2913.02(A)(1), "which actually applies to theft by shoplifting scenarios," as opposed to R.C. 2913.02(A)(3). In order to support this argument, Murchison relies onState v. Phillips (1993), 84 Ohio App.3d 836. However, Phillips is distinguishable from the instant case, since it only offers a comparison between R.C. 2913.02(A)(1) and 2913.02(A)(2). In Phillips, the appellant was found guilty of theft, under R.C. 2913.02(A)(1), when she placed merchandise in her shopping cart and transported it without payment beyond the checkout point. Id. at 837. On appeal, the *Page 6 
appellant argued that she was indicted under the wrong statutory provision; the state's evidence could only support a conviction under R.C. 2913.02(A)(2), not 2913.02(A)(1). Id. at 839. The Phillips Court determined "the allegations against [the] appellant [fell] within the scope of R.C. 2913.02 (A)(1), not (A)(2)." Id. at 841.
 {¶ 23} In State v. Thomas, 11th Dist. No. 2004-L-176, 2005-Ohio-6570, at ¶ 25, this court upheld the appellant's conviction of theft by deception, a violation of R.C. 2913.02(A)(3). In Thomas, a store's loss-prevention manager first observed a man remove a microwave from the box and then stuff the box with DVDs. Id. at ¶ 2. The man then taped the microwave box shut and returned it to another shelf. Id. After this was complete, the appellant purchased the "would-be" microwave. Id. at ¶ 5. On appeal, this court determined the state presented sufficient evidence to demonstrate that the appellant knowingly exerted control over the box containing DVDs with the purpose to deprive the store by means of deception. Id. at ¶ 25.
 {¶ 24} While Murchison could have been indicted under R.C. 2913.02(A)(1), the state chose to indict her on two counts of complicity to theft by deception. Illustrative of this point is the following exchange that took place at trial, outside the presence of the jury:
 {¶ 25} "[Court]: Why didn't you indict under (A)(1), or certainly under (A)(2), but (A)(3)?
 {¶ 26} "[Prosecutor]: Your Honor, it was my understanding that it could be argued by deception because it was a hiding of property that was taken, so the deception was that it was, the coats were put underneath, the jewelry was hidden. So there was a deception, deceiving individuals in the taking of the property-
 {¶ 27} "[Court]: But doesn't (A)(1) or (A)(2) actually fit even better than (A)(3)? *Page 7 
 {¶ 28} "[Prosecutor]: I would not disagree with Your Honor.
 {¶ 29} "[Court]: I mean, (A)(1) is without consent. Certainly the Defense can't even make an argument that Macy's would have consented to anybody hiding merchandise on their body.
 {¶ 30} "[Prosecutor]: Right, I — State does not disagree.
 {¶ 31} "* * *
 {¶ 32} "[Prosecutor]: Your Honor, I guess the argument would be that they didn't misrepresent by closing the jacket up so that it appeared that there was nothing underneath. That the jewelry was in fact hidden so that there was a deception that they had nothing, that they could leave the store and had not taken anything. But argue that-
 {¶ 33} "[Court]: I'll buy that argument. It's not the strongest element of theft. The strongest — I mean, your strongest would be (1), without consent. But I'll buy the argument that hiding stuff on your person is a misrepresentation, even though it's not verbal, it would — I could consider that to be a misrepresentation as to which you had on. * * *"
 {¶ 34} We further recognize that a prosecutor may bring charges against a defendant under any statute that proscribes the criminal behavior. State v. Aaron (May 21, 1985), 10th Dist. No. 83AP-1202, 1985 Ohio App LEXIS 6672, at *4. (Citations omitted).
 {¶ 35} Based on the foregoing, this argument propounded by Murchison is without merit.
 {¶ 36} Murchison also argues the state failed to set forth sufficient evidence to sustain the jury's verdict. After reviewing the record, we conclude that there was *Page 8 
sufficient evidence upon which to conclude, beyond a reasonable doubt, that all the elements of theft under R.C. 2913.02(A)(3) had been satisfied.
 {¶ 37} At trial, Mr. Cutwright testified that he is involved in approximately 200 apprehensions a year; 50 percent of which involve multiple persons. With respect to shoplifting, Mr. Cutwright looks for abnormal behavior — staring at the surveillance domes, asking for empty bags, walking along the back wall, denial of help from a sales associate, or wearing inappropriate clothing for the present weather conditions. Mr. Cutwright further testified that both Ms. Tubbs and Murchison were acting suspiciously upon entering the store. Further, Murchison was continuously looking at the surveillance camera and stood within inches of Ms. Tubbs as she perused the jewelry displayed on the rounder. As Ms. Tubbs placed the earrings in her purse, Murchison used her body to shield Ms. Tubbs' actions from the surveillance camera. As such, the state provided sufficient evidence that Murchison engaged in deceptive behavior to deprive Macy's of possession of property, specifically the five pairs of earrings. Therefore, Murchison's first assignment of error is overruled.
 {¶ 38} Murchison's second assignment of error states:
 {¶ 39} "Defendant-appellant's conviction for complicity to theft by deception was clearly against the manifest weight of the evidence."
 {¶ 40} When addressing whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following test:
 {¶ 41} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial *Page 9 
ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 42} Under this assignment of error, Murchison argues the evidence presented at trial failed to establish she aided and abetted Ms. Tubbs in stealing the five pairs of earrings. We disagree.
 {¶ 43} A review of the record reveals the jury heard testimony from Mr. Cutwright, the loss-prevention manager at Macy's. The testimony of Mr. Cutwright revealed that Murchison perused the area in order to locate the video surveillance cameras and, on several occasions, stared at the surveillance cameras located in the jewelry department. Further, Murchison attempted to use her body to shield the actions of Ms. Tubbs from the surveillance camera. In addition, the jury was able to personally observe Murchison's actions, as they viewed the tape of Macy's video surveillance.
 {¶ 44} In her brief, Murchison also attempts to discredit the testimony of Mr. Cutwright. However, we emphasize that the weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 45} Moreover, "[t]he trier of fact is free to believe or disbelieve all or any of the testimony. * * * The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. * * * Consequently, although an appellate court must act as a `thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's *Page 10 
determination of the witnesses' credibility. * * *" State v. Sevilla, 10th Dist. No. 06AP-954, 2007-Ohio-2789, at ¶ 13. (Internal citations omitted.)
 {¶ 46} We further observe that while the jury found Murchison guilty of count one, she was found not guilty on count two, which related to the theft of the leather jackets. This demonstrates the jury's ability to be impartial and, if they were not convinced by the state's evidence, to enter a not guilty verdict.
 {¶ 47} Accordingly, based on the above-described behavior and after reviewing the record and weighing the evidence and all reasonable inferences, we cannot conclude the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 48} Murchison's second assignment of error is without merit.
 {¶ 49} The judgment of the trial court is affirmed.
 DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur. *Page 1