[Cite as *State v. Siefer*, 2011-Ohio-1868.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

STATE OF OHIO,                                    CASE NO. 5-09-24

   PLAINTIFF-APPELLEE,

  v.

ROSEMARY A. SIEFER,                               O P I N I O N

   DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2008 CR 163

Judgment Affirmed

Date of Decision:  April 18, 2011

APPEARANCES:

   *Deborah Kovac Rump* for Appellant

   *Drew Wortman* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Rosemary Siefer, appeals from the judgment of the Court of Common Pleas of Hancock County sentencing her to a ten-year and five-month prison term and ordering her to pay $200.00 in restitution to the Hancock County METRICH Enforcement Unit. On appeal, Siefer contends that the trial court erred in sentencing her on two counts of possession of cocaine and one count of aggravated possession of drugs, as the offenses were allied offenses of similar import; that the trial court abused its discretion in sentencing her to a ten-year and five-month prison sentence; that the trial court erred in failing to properly include a term of post-release control in her sentence in violation of R.C. 2967.28; that the sentence was void pursuant to Crim.R. 32 for failing to include the means of conviction in the judgment entry; that her right to a fair trial was violated by prosecutorial misconduct; that the trial court erred in instructing the jury on constructive possession; and, that she was denied the effective assistance of counsel. Based on the following, we affirm the judgment of the trial court.

{¶2} In July 2008, the Hancock County Grand Jury indicted Siefer on Count One: engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), a felony of the first degree; Count Two: trafficking in cocaine in an amount that equals or exceeds 1 gram but is less than 5 grams that is crack cocaine in violation of R.C. 2925.03(A), (C)(4)(c), a felony of the fourth degree;

Count Three: possession of cocaine in an amount that equals or exceeds 25 grams but is less than 100 grams that is crack cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a felony of the first degree; Count Four: possession of cocaine in an amount that equals or exceeds 25 grams but less than 100 grams that is not crack cocaine in violation of R.C. 2925.11(A), (C)(4)(c), a felony of the third degree; and, Count Five: aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), a felony of the fifth degree. The indictment arose following a controlled drug purchase from and subsequent search of Siefer's residence.

{¶3} In August 2008, Siefer entered a not guilty plea to all counts in the indictment.

{¶4} In March 2009, Siefer filed a motion to reveal the identity of the confidential informant mentioned in the State's discovery response.

{¶5} In May 2009, a final pre-trial conference was held, during which the State informed Siefer that Charles Roberts was the confidential informant. The next day the State provided Siefer with Roberts' LEADS report.[1]

{¶6} In May 2009, the case proceeded to jury trial. Prior to the impaneling of the jury, the State moved to dismiss Count One of the indictment. Thereafter, the State made its opening statement, stating the following, in pertinent part:

> **A confidential informant is not a police officer. It's an average citizen. And typically a confidential informant comes in**

---

[1] LEADS stands for "Law Enforcement Automated Data System."

**different forms. \* \* \* Former drug user. Maybe former drug dealer. \* \* \* One of the people that METRICH has been using for a number of years now is a man by the name of Charles Roberts. A number of years ago, Charles Roberts got in trouble with the law. \* \* \* And sometime around eight or so years ago, he decided he wanted to work as a confidential informant for the police. \* \* \* And one of the things that confidential informants do, they get paid per buy. \* \* \* The police officers, they were happy with his performance, so they continued to use him for a number of years. \* \* \* Back in the fall, he came to Detective Francis and said, I believe I can buy crack from Rosemary Siefer. Because of his work in the past they believed him and they said set up a deal. So that's what he did. He set up a deal with Rosemary Siefer because he knew she would sell him drugs.**

Trial Tr., p. 178.

{¶7} Moreover, the State discussed the amount of drugs seized from Siefer's residence during the execution of the search warrant, stating that the "crack cocaine weighed about twelve grams" (Id. at 181), and that "they found twenty-six grams of crack cocaine." (Id. at 182). At no time did Siefer object to the State's opening statement.

{¶8} The State's first witness was Detective Michael Swope of the Findlay Police Department, who testified that he was a member of the METRICH Drug Taskforce; that, in November 2007, he was involved in a controlled drug purchase with Roberts as a confidential informant; that, as a result of the controlled drug purchase, they obtained a search warrant to Siefer's residence; and, that, upon searching the residence, they found security cameras both inside and outside the residence as well as inside Siefer's bedroom.

-4-

{¶9} On the second day of trial the State called Roberts to the stand. Before Roberts testified, Siefer objected to his proffered testimony, contending that she was not afforded proper opportunity to speak with Roberts. The trial court overruled Siefer's objection, noting that Roberts' identity was disclosed to Siefer during the final pre-trial conference and Siefer was given Roberts' LEADS report. Despite its ruling, the trial court granted Siefer's trial counsel time to speak with Roberts prior to Roberts' testimony.

{¶10} Roberts testified that he was acting as a confidential informant for the METRICH Drug Taskforce on the day of the controlled drug purchase from Siefer; that on the day of the controlled drug purchase Detective Francis was his police handler; that he contacted Detective Francis stating that he could purchase drugs from Siefer; that, prior to the controlled drug purchase, he met with Detective Francis, who searched his person and car, and placed a wire on his person; that he drove alone to the residence, where he encountered Siefer; that he requested, and received, two grams of crack cocaine in exchange for two hundred dollars; and, that, immediately following the purchase, he met with Detective Francis, who took possession of the crack cocaine and searched his person and car.

{¶11} Roberts further testified that Siefer's trial counsel visited him at his residence before trial and after the first day of trial; that on both occasions he declined to speak with Siefer's trial counsel; that he also declined to speak with

Siefer's trial counsel during the meeting granted by the trial court; and, that he was never directed to not speak with Siefer's trial counsel.

{¶12} Detective Francis of the Findlay Police Department testified that he was a member of the METRICH Drug Taskforce; that Roberts contacted him stating that he could purchase drugs from Siefer; that, on November 14, 2007, he met with Roberts, searched his person and car, placed a wire on his person, and gave him two hundred dollars to purchase crack cocaine; that, upon completion of the controlled drug purchase, Roberts met with him, and gave him the suspected crack cocaine purchased from Siefer; that, as a result of the controlled drug purchase, he submitted an affidavit for a search warrant, which was granted; that upon execution of the search warrant, in December 2007, three individuals were found in the residence where Roberts had purchased the suspected crack cocaine from Siefer; that one of those individuals was Siefer, and that she appeared highly intoxicated; that Siefer told him that the bedroom, as well as the safe in the bedroom, was hers; that Siefer was asked to open the safe, which she attempted to do unsuccessfully; that Siefer stated the contents of the safe were hers; that he obtained a second search warrant to search the safe; that, among other things, the safe contained 25.8 grams of crack cocaine, two baggies of powder cocaine weighing 18.9 grams and 11.8 grams, respectively, and a single pill of Oxycodone; that based on a water bill for the residence, real estate listings at the County

Auditor's Office, and a deed found in the safe, the residence belonged to Siefer; and, that he told Siefer's trial counsel to stop bothering Roberts.

**{¶13}** Thereafter, the State made its closing arguments, stating the following, in pertinent part:

> **Finally, Charles Roberts. Charles Roberts is not a choir boy. Charles Roberts is not an upstanding citizen. Charles Roberts is and does have a criminal past. But as Detective Swope testified, drug dealers don't sell to choir boys. \* \* \* So I have to use people like Charles Roberts. Thank goodness for the Charles Roberts who are willing to turn on people inside their own communities like Rosemary Siefer. Either way doesn't matter. Charles Roberts is a criminal or he's not a criminal, doesn't matter. Rosemary still sold him drugs. And he had nothing to do with what was found inside her safe. Don't let his criminal past sway you on that. Regardless if he had prior felonies or not, she still had drugs in her safe.**

Trial Tr., p. 422-23.

**{¶14}** In addition, the State reiterated the amount of drugs seized from Siefer's residence, specifically the safe she claimed to own, stating that "a big chunk of crack cocaine, and it weighs 25.8 grams," was found in the safe, as well as a total of 30.7 grams of powder cocaine and one Oxycodone pill. (Id. at 409). The State also discussed the cameras located in and around the residence, specifically the camera in Siefer's bedroom, and the reasons one may install a camera in their bedroom. At no time did Siefer object to the State's closing argument.

**{¶15}** The jury returned a verdict convicting Siefer on all four counts.

{¶16} Subsequently, the matter proceeded to sentencing, at which the State argued, in pertinent part:

> **Mr. Schuman has made reference to a limited criminal history, but what's ironic with regards to this limited criminal history it involved two things, drugs, substance abuse, and offenses of violence. We are here on peddling, trafficking, and possessing drugs, and have a domestic violence, an offense of violence as a prior conviction certainly should cause this Court some concern.[2]**
>
> **We have the Defendant's behavior while on bond in the original indictment. The Court is well aware her bond was revoked and why was it revoked because she continued to test positive for cocaine. Review of the PSI shows at least five positive tests before she was taken back into custody. So while she was on PSI she was given an opportunity to demonstrate her behavior and she did exactly that, Your Honor. She did nothing during that time when she was out on bond to demonstrate any type of positive behavior.**

Sentencing Tr., p. 16-17.

{¶17} Thereafter, the trial court sentenced Siefer to a seventeen-month prison term on Count Two, a nine-year prison term on Count Three, a four-year prison term on Count Four, and a eleven-month prison term on Count Five, with the sentences in Counts Three, Four, and Five to be served concurrently with each other, but consecutively to the sentence for Count Two, resulting in a total prison term of ten-years and five-months. Additionally, the trial court ordered that Siefer

---

[2] Review of Siefer's PSI confirms the statements made by the State.

pay $200.00 in restitution to the Hancock County Drug Task Force METRICH Enforcement Unit.

{¶18} It is from this judgment Siefer appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED BY NOT MERGING SIEFER'S CONVICTIONS AS ALLIED OFFENSES OF SIMILAR IMPORT.**

*Assignment of Error No. II*

**THE TRIAL COURT ABUSED ITS DISCRETION BY THE LENGTHY SENTENCING IMPOSED, AND SUBJECTED SIEFER TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF HER CONSTITUTIONAL RIGHTS.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED BY NOT COMPLYING WITH R.C. 2967.28 WHEN IMPOSING SENTENCE. THE SENTENCE IS UNAUTHORIZED AND VOID.**

*Assignment of Error No. IV*

**THE JUDGMENT ENTRY DOES NOT COMPLY WITH CRIM.R. 32 AND IS VOID.**

*Assignment of Error No. V*

**THE PROSECUTOR ENGAGED IN A PATTERN OF MISCONDUCT THAT VIOLATED SIEFER'S RIGHT TO DUE PROCESS; SPECIFCALLY, A FAIR TRIAL.**

*Assignment of Error No. VI*

**THE TRIAL COURT ERRED BY PROVIDING THE JURY WITH AN INSTRUCTION FOR CONSTRUCTIVE POSSESSION GIVEN THERE WAS NO EVIDENCE SIEFER WAS CONSCIOUS OF THE PRESENCE OF THE DRUGS.**

*Assignment of Error No. VII*

**SIEFER'S TRIAL COUNSEL DID NOT PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE HE DID NOT SEEK SUPPRESSION OF THE STATEMENTS MADE BY SIEFER, OR HER CONDITION, AT THE TIME OF THE SEARCH WARRANT.**

{¶19} Due to the nature of Siefer's assignments of error, we elect to address her third and fourth assignments together, and last.

*Assignment of Error No. I*

{¶20} In her first assignment of error, Siefer contends that the trial court erred by denying her motion to merge all four counts. Specifically, Siefer contends that the crimes constitute allied offenses of similar import. We disagree.

{¶21} In determining whether two or more offenses should be merged, the intent of the General Assembly is controlling. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶46. We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct. Id. Under R.C. 2941.25, the court must determine, prior to sentencing, whether the offenses were committed by the same

conduct. Id., at ¶47. In so determining, the court should conduct the following analysis:

> **"In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.**
>
> **"If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).**
>
> **"If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.**
>
> **"Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."**

Id., at ¶¶48-51.

{¶22} "Trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import." *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625 at paragraph two of the syllabus. Accordingly, Siefer contends that Count Two should merge with Counts Three, Four, and Five. We disagree.

{¶23} The distinguishing fact between the case at bar and *Cabrales* is time, specifically the time at which the offenses occurred. In *Cabrales*, the defendants were pulled over by a police officer, who subsequently discovered a large quantity of marijuana inside their vehicle. *Cabrales*, 2008-Ohio-1625, ¶2. Defendants were charged with possession of and trafficking in marijuana. Id. In the case at bar, the event that precipitated Count Two and the events that precipitated Counts Three, Four, and Five occurred a month apart. As a result of the temporal remoteness between Count Two and Counts Three, Four, and Five, we find that the offenses were committed separately, and with separate animus. See *Johnson* 2010-Ohio-6314, at ¶51. Consequently, the trial court did not err in declining to merge Count Two with Counts Three, Four, and Five.

{¶24} Siefer also contends that the trial court erred in declining to merge Counts Three, Four, and Five. In resolving this contention we must address two questions. First, what drugs did defendant possess? Second, did the General Assembly intend for the possession of the drugs to constitute separate crimes?

{¶25} In the case at bar, Detective Francis testified that upon opening Siefer's safe he found 25.8 grams of crack cocaine, 30.7 grams of powder cocaine, and one Oxycodone pill. Pursuant to R.C. 2925.11, possession of each aforementioned drug constitutes a separate crime. R.C. 2925.11, provides as follows:

**(A) No person shall knowingly obtain, possess, or use a controlled substance.**

**\*\*\***

**(C) Whoever violates division (A) of this section is guilty of one of the following:**

**(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:**

**(a)  Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.**

**\*\*\***

**(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:**

**(c) If the amount of the drug involved equals or exceeds twenty-five grams but is less than one hundred grams of cocaine that is not crack cocaine or equals or exceeds five grams but is less than ten grams of crack cocaine, possession of cocaine is a felony of the third degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.**

**\*\*\***

**(e) If the amount of the drug involved equals or exceeds five hundred grams but is less than one thousand grams of cocaine that is not crack cocaine or equals or exceeds twenty-five grams but is less than one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.**

{¶26} Pursuant to the foregoing language, we find that the General Assembly intended that possession of crack cocaine, cocaine, and Oxycodone, be treated as separate crimes. See *State v. Crisp,* 3d Dist. No. 1-05-45, 2006-Ohio-2509, ¶22 (finding that the legislature intended there to be a distinction between crack cocaine and cocaine). If we were to find otherwise, as Siefer suggests, we would essentially abrogate the General Assembly's intent that possession of certain drugs result in separate crimes, which would significantly and negatively alter the legislation's purpose and effect.

{¶27} Accordingly, we overrule Siefer's first assignment of error.

*Assignment of Error No. II*

{¶28} In her Second assignment of error, Siefer contends that the length of the sentences imposed by the trial court constitutes cruel and unusual punishment. We disagree.

{¶29} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh,* 3d Dist. No. 16-07-07, 2007-Ohio-5774, ¶8, citing *State v. Carter,* 11th Dist. No. 2003-P-0007, 2004-Ohio-

1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." *Daughenbaugh,* 2007-Ohio-5774, at ¶8, citing *Carter,* 2004-Ohio-1181, at ¶44; R.C. 2953.08(G).

{¶30} The trial court has full discretion to sentence an offender to any term of imprisonment within the statutory range without a requirement that it make findings or give reasons for imposing the maximum sentence, more than the minimum sentence, or ordering sentences to be served consecutively. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus.

{¶31} R.C. 2929.11, 2929.12, 2929.13, and the unsevered portions of R.C. 2929.14 govern sentencing. *State v. Petrik,* 3d Dist. No. 3-10-06, 2010-Ohio-3671, ¶29, citing *Foster,* 109 Ohio St.3d 1, at ¶36. R.C. 2929.11(A) and (B) provide as follows:

> **(A) A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.**

**(B) A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.**

**{¶32}** Additionally, when sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12(B), (C), (D), and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A); see also *State v. Ramos,* 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶25. However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade,* 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶8, citing *State v. Arnett,* 88 Ohio St.3d 208, 2000-Ohio-302.

**{¶33}** Siefer points to nothing in the record that clearly and convincingly demonstrates that the record does not support the sentences or that the sentences are contrary to law. Each of the sentences imposed by the trial court fall within the applicable statutory ranges. Furthermore, the trial court stated in its judgment entry that it considered the factors set forth under R.C. 2929.12 and R.C. 2929.13, along with the principles and purposes of sentencing under R.C. 2929.11.

**{¶34}** Consequently, because we find that the trial court considered the appropriate sentencing factors under R.C. 2929.11, R.C. 2929.12, and R.C. 2929.13, because the trial court has discretion to sentence an offender to any term

of imprisonment within the statutory range and to order sentences to be served concurrently or consecutively, and because Siefer has a prior criminal history, evidencing a likelihood of recidivism under R.C. 2929.12(D), we find no error in the trial court's imposition of Siefer's sentence.

{¶35} Accordingly, we overrule Siefer's second assignment of error.

*Assignment of Error No. V*

{¶36} In her fifth assignment of error, Siefer contends that the prosecutor engaged in misconduct denying her right to a fair trial and due process of law. Specifically, Siefer contends that she was denied a fair trial and due process of law when the State delayed in identifying the confidential informant; when the State elicited inadmissible and prejudicial testimony from Detective Francis; when the State, during its opening statement, vouched for the credibility of Roberts' and the police officers, denigrated Siefer, and exaggerated the amount of drugs found; when the State, during its closing argument, vouched for Roberts' credibility, exaggerated the amount of drugs found in the safe, and speculated about the purpose of the video camera in Siefer's bedroom. We disagree.

{¶37} "[T]he test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." *State v. Twyford*, 94 Ohio St.3d 340, 354-55, 2002-Ohio-894; see also, *State v. Smith* (1984), 14 Ohio St.3d 13, 14-15. Thus, an improper

question or remark made by the prosecutor can nevertheless fail to constitute reversible error. *State v. Satta,* 3d Dist. No. 9-01-38, 2002-Ohio-5049, at ¶27. Ultimately, "the touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor." *Tywford,* 94 Ohio St.3d at 355.

**{¶38}** First, Siefer challenges the State's failure to timely disclose the confidential informant's identity. Initially, we note Crim.R. 16 governs the disposition of this issue. The failure to comply with Crim.R. 16 is governed by Crim.R. 16(L)(1), which provides:

> **The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.**

**{¶39}** A prosecutor's violation of Crim.R. 16 is reversible error, "only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, ¶131, citing *State v. Parson* (1983), 6 Ohio St.3d 442, 445.

**{¶40}** Two months prior to trial, Siefer filed a discovery motion requesting the State to reveal the confidential informant's identity. As far as the record is

concerned, the State never filed a response to Siefer's discovery request. However, Crim.R. 16 does not require such a filing with the trial court. See *State v. Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547 (Rogers, J., Concurring). Accordingly, this fact alone is not sufficient to find reversible error.

{¶41} Pertinent to the disposition of Siefer's contention is the fact that Roberts' identity was revealed to Siefer at the final pre-trial conference, which occurred four days prior to trial. In addition, the State gave Siefer a copy of Roberts' LEADS report the following day. With this information, Siefer's trial counsel visited Roberts at his residence in attempt to speak with him, but Roberts declined to speak. During trial, the issue was brought to the trial court's attention, but the trial court concluded Siefer had sufficient notice of the informant's identity. Nevertheless, prior to Roberts' testimony, Siefer's trial counsel was allotted ten minutes to speak with Roberts, who again declined to speak.

{¶42} In light of the following, we find the State's delay in disclosing Roberts' identity was neither willful nor prejudicial to Siefer. Siefer did request Roberts' identity to be disclosed two months prior to trial, yet at no time following that motion did Siefer file a motion to compel the State to disclose Roberts' identity. Looking at the record, it appears Siefer waited until the final pre-trial conference to press the issue about the confidential informant's identity, at which point the State disclosed his identity and LEADS report. Accordingly, Siefer had

Roberts' information three full days prior to trial, which provided Siefer sufficient time to meet with Roberts. See *State v. Phillips* (1993), 84 Ohio App.3d 836, 842-43. Indeed, Siefer's trial counsel visited Roberts' residence several days before trial, and attempted to speak with Roberts about the case. When the issue was brought to the trial court's attention, the trial court allotted time for Siefer's trial counsel to speak with Roberts' prior to his testimony. See *State v. James* (1990), 3d Dist. No. 1-89-57, 1990 WL 35419. From these facts, we find Siefer was given ample opportunity to learn about and meet with Roberts, and prepare for his testimony. Moreover, if Siefer felt as though she needed more time to prepare for Roberts' testimony, she could have moved for a continuance. Accordingly, we find nothing in the record that demonstrates that any delay in disclosing Roberts' identity to Siefer was the result of willful conduct, nor anything to indicate prejudice to Siefer.

{¶43} Second, Siefer contends that Roberts was directed to not speak with Siefer's trial counsel. The only evidence Siefer offers in support of this contention is Detective Francis' testimony, during which he testified that he told Siefer's trial counsel to leave Roberts alone. While we do not condone Detective Francis' statement, this fact alone is not prejudicial to Siefer. First, Siefer's trial counsel should have been aware that Detective Francis' statement did not prohibit him from speaking to Roberts. In fact, it appears that Siefer's trial counsel was aware

-20-

of this fact, because after Detective Francis told counsel to stop bothering Roberts, counsel visited Roberts' residence. More importantly, Roberts testified that he was never directed to not speak with Siefer's trial counsel, and that he alone chose not to speak. In light of Roberts' testimony, and the absence of any countervailing evidence, we find no prejudicial conduct occurred with regard to Roberts' decision to not speak with Siefer's trial counsel.

**{¶44}** Third, Siefer contends that the State improperly elicited inadmissible and prejudicial information from Detective Francis, and that such conduct amounted to prosecutorial misconduct. Specifically, Siefer challenges the following colloquy:

> **Q: Why do you assume that those items on the table and in the safe belong to Rosemary Siefer?**
>
> **Mr. Schuman: Object, Your Honor. I don't think that was in the testimony.**
>
> **The Court: I'm going to overrule. It's up to the jury to make these decisions as to what the evidence before them is.**
>
> **Detective Francis: Due to the intelligence we received about the residence, being it was her residence, she was present at the time, yes, the drugs – they were in her possession.**
>
> **Q: Specifically why do you say that?**
>
> **A: She was at the residence and the drugs were there.**
>
> **Q: Okay. Did you ever receive intelligence as to Rosemary having drugs in her safe?**

**A: Yes**

**Mr. Shuman: Object, Your Honor. That calls for hearsay testimony.**

**The Court: Sustained. Jury instructed to disregard the question and the answer.**

Trial Tr., p. 386-87.

{¶45} We first note that the question to Detective Francis as to why he assumed the items on the table and in the safe belonged to Siefer was improper. The question calls for speculation and a conclusion on the part of the witness. Such a question improperly invades the province of the jury. The jury is the fact finder at trial and Detective Francis' assumptions are immaterial and prejudicial. However, given the substantial evidence presented at trial, including Siefer's own statements during the search, we find the error to be harmless in this case. The later question regarding the receipt of intelligence about the contents of the safe, was objected to and sustained. Therefore, we find that issue was properly resolved by the trial court. As to the remainder of the colloquy, we find nothing which amounts to prosecutorial misconduct. Accordingly, we find that no prosecutorial misconduct took place with regard to testimony elicited during the State's examination of Detective Francis.

{¶46} Siefer's two remaining contentions concerning prosecutorial misconduct pertain to the State's opening statement and closing argument. The

test for prosecutorial misconduct during opening statements and closing arguments is whether the remarks made by the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the accused. *State v. White,* 82 Ohio St.3d 16, 22, 1998-Ohio-363. In opening statements and closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn. *State v. Ballew,* 76 Ohio St.3d 244, 255, 1996-Ohio-81. "'It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.'" *State v. Van Meter* (1998), 130 Ohio App.3d 592, 601, quoting *State v. Williams,* 79 Ohio St.3d 1, 12, 1997-Ohio-407. However, "[a] prosecutor may state his opinion if it is based on the evidence presented at trial." *State v. Watson* (1991), 61 Ohio St.3d 1, 10, abrogated on other grounds by *State v. McGuire,* 80 Ohio St.3d 390, 1997-Ohio-335. Additionally, we review a prosecutor's opening statement and closing argument in its entirety. Id. If, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty, even without the improper remarks, then the trial will not be deemed unfair. *State v. Tenace,* 109 Ohio St.3d 255, 2006-Ohio-2417, at ¶45, citing *State v. Treesh,* 90 Ohio St.3d 460, 464, 2001-Ohio-4. Again, the touchstone of this analysis "is the fairness of the trial, not the culpability of the

prosecutor." *State v. Myers,* 97 Ohio St.3d 335, 2002-Ohio-6658, ¶140, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219.

**{¶47}** Siefer challenges the State's opening statement in four respects. First, she challenges the manner in which the prosecutor vouched for Roberts' credibility. Second, she challenges her portrayal by the prosecutor. Third, she challenges the manner in which the prosecutor vouched for the police officers' credibility, particularly with regard to obtaining the second search warrant. Fourth, she challenges the prosecutor's discussion and phrasing concerning the amount of drugs found in the safe.

**{¶48}** In reviewing the State's entire opening statement, we find the prosecutor's statements were reasonably based on the evidence presented at trial. In addition, we find that any opinions expressed during the opening statement were proper, as they did not exceed the latitude of permissible opinions. *Ballew*, 76 Ohio St.3d at 255. Accordingly, we find that Siefer was not prejudiced by the State's opening statement.

**{¶49}** Next, Siefer challenges the State's closing argument in three respects. First, she challenges the manner in which the prosecutor vouched for Roberts' credibility. Second, she challenges the prosecutor's discussion and phrasing concerning the amount of drugs found in the safe. Third, she challenges

the prosecutor's speculation about the purpose of the video camera in Siefer's bedroom.

{¶50} In reviewing the State's entire closing argument, we find the prosecutor's statements were reasonably based on the evidence presented at trial. As to the first two challenged comments, we note that they are substantially similar to those made in the State's opening statement, which we found to be proper. As to the prosecutor's speculation concerning the purpose of the camera in Siefer's bedroom, we find that the prosecutor was simply drawing an inference, which he may do, *Ballew*, 76 Ohio St.3d at 255, as long as he is not expressing his personal belief or opinion about the credibility of a witness or the accused. See *Williams*, 79 Ohio St.3d at 12. Accordingly, we find that Siefer was not prejudiced by the State's closing argument.

{¶51} In finding that there was no prosecutorial misconduct with regard to disclosing the confidential informant's identity, and that none of the questions or remarks made by the State during trial prejudicially affected Siefer's substantial right to a fair trial and due process of law, we overrule Siefer's fifth assignment of error.

*Assignment of Error No. VI*

**{¶52}** In her sixth assignment of error, Siefer contends that the trial court erred by giving the jury an instruction for constructive possession because there was no evidence Siefer was aware of the drugs presence in the safe. We disagree.

**{¶53}** To prove a charge of possession of a controlled substance, the State must show that the accused knowingly obtained, possessed, or used a controlled substance. R.C. 2925.11(A). The Revised Code defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). The issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer,* 82 Ohio St.3d 490, 492, 1998-Ohio-193.

**{¶54}** Possession may be actual or constructive. *State v. Haynes* (1971), 25 Ohio St.2d 264. For constructive possession to exist, the State must demonstrate that the defendant was able to exercise dominion or control over the item, even though the item may not be within his immediate physical possession. *State v. Wolery* (1976), 46 Ohio St.2d 316; see, also, *State v. Alexander,* 8th Dist. No. 90509, 2009-Ohio-597, ¶23; *State v. Messer* (1995), 107 Ohio App.3d 51, 56. Further, it must also be shown that the person was conscious of the object's

presence. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91. Circumstantial evidence alone is sufficient to support a finding of constructive possession. *State v. Jenks* (1981), 61 Ohio St.3d 259, 272-73, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355.

{¶55} At trial, evidence of Siefer's control over the safe was proffered via Detective Francis' testimony. During execution of the first search warrant, Siefer stated that the bedroom, and the safe within it, was hers. Siefer also claimed the contents of the safe were hers. Siefer even attempted to open the safe, but was unsuccessful. In addition, there is nothing in the record that suggests anyone other than Siefer had access to the safe, which bolsters the fact that Siefer exercised some degree of control over the safe. Accordingly, we find that there was sufficient evidence to conclude Siefer exercised control over the safe.

{¶56} As to her consciousness of the safe's contents, specifically the crack cocaine, powder cocaine, and Oxycodone, Siefer argues that her intoxication abrogated her consciousness of the safe's contents. We do not agree. When Siefer caused the drugs to be placed in the safe she became conscious of their presence. That consciousness lingers. The fact that her intoxication during the execution of the search warrant may have affected her memory about the contents of the safe is of no consequence in determining whether she was conscious of the drugs

presence in the safe. Siefer admitted that the contents of the safe were hers. We find that this fact, coupled with the absence of evidence that someone else had access to the safe, provided sufficient evidence to conclude Siefer was conscious of the drugs presence in the safe.

{¶57} In light of the foregoing, we find that the trial court properly included an instruction for constructive possession. Accordingly, we overrule Siefer's sixth assignment of error.

*Assignment of Error No. VII*

{¶58} In her seventh assignment of error, Siefer contends that trial counsel was ineffective because he did not seek suppression of Siefer's condition and statements she made during the execution of the search warrant. We disagree.

{¶59} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id., at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by

constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103, 1997-Ohio-355.

{¶60} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting *Smith v. Murray* (1986), 477 U.S. 527, 535.

{¶61} The United States Supreme Court has held that the "failure to file a suppression motion does not constitute per se ineffective assistance of counsel" *Kimmelman v. Morrison* (1986), 477 U.S. 365, 384, cited in *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000-Ohio-448. There must also be a reasonable probability that the motion will be successful. *State v. Ligon,* 3d Dist. No. 4-2000-25, 2001-Ohio-2231. Thus, this Court's determination of whether Siefer's trial counsel was ineffective relies upon whether there was a reasonable probability that a motion to suppress would have been successful. *State v. Pierce*, 3d Dist. No. 11-09-05, 2010-Ohio-478, ¶34.

{¶62} First, Siefer contends that her trial counsel was ineffective because he did not attempt to suppress evidence of Siefer's physical condition during the execution of the search warrant. To be successful, a motion to suppress the

introduction of Siefer's physical condition during the execution of the search warrant would have to challenge the legality of the search itself. Had the police unlawfully entered Siefer's residence any evidence discovered therein would be inadmissible. Siefer did file a motion to suppress concerning the first search warrant, but the trial court denied the motion, which was not appealed.[3] Accordingly, the record reflects that the police, including Detective Francis, lawfully entered Siefer's residence. Once lawfully inside, anything Detective Francis witnessed as to Siefer's physical condition, such as her intoxicated state, is properly admissible. As a result, we find that a motion to suppress Siefer's condition would not have been successful.

{¶63} Second, Siefer contends that her trial counsel was ineffective because he did not attempt to suppress the statements Siefer made during the execution of the search warrant. In order to suppress her statements, Siefer would have to demonstrate that her statements were unlawfully obtained by the police. Siefer was in custody at the time she identified the bedroom, safe, and contents of the safe as hers. However, nothing in the record demonstrates that Siefer was forced, coerced, or otherwise unlawfully persuaded to make those statements. Instead, the record demonstrates that Siefer freely made the statements. Without any evidence

---

[3] Even if the denial of the suppression motion were appealed, review of the record does not indicate that the trial court erred in overruling Siefer's motion.

to suggest otherwise, we cannot find, with reasonable certainty, that a motion to suppress Siefer's statements would have succeeded.

{¶64} Consequently, because we find no error in trial counsel's failure to file a motion to suppress Siefer's condition and statements, we find no error in trial counsel's performance.

{¶65} Accordingly, we overrule Siefer's seventh assignment of error.

*Assignments of Error No. III & IV*

{¶66} In her third and fourth assignments of error, Siefer contends that the trial court improperly informed her about the terms of her post-release control, and did not comply with Crim.R. 32(C). In November 2010, finding that the trial court did err, this Court stayed the appeal, and remanded the case back to the trial court for resentencing. The trial court resentenced Siefer in December 2010. Upon review of the latest judgment entry, we find that the trial court properly resentenced Siefer. Accordingly, we find Siefer's third and fourth assignments of error to be moot, and we decline to address them. App.R. 12(A)(1)(c).

{¶67} Having found no error prejudicial to Siefer herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jnc**